DAVID GOAD, *pro se*
537 E Ave A
Blythe, CA 92225
(949) 799-2225
1983tj@protonmail.com

FILED
CLERK, U.S. DISTRICT COURT

AUG 3 0 2021

CENTRAL DISTRICT OF CALIFORNIA
BY ___DTA___ DEPUTY


PAID

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

DAVID GOAD, an individual,

      Plaintiff,

vs.

RONALDO R. REYES;
DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE
FOR SECURITIZED ASSET BACKED
RECEIVABLES LLC TRUST 2007-
BR4, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-BR4;
NEW CENTURY MORTGAGE, its
SUCCESSORS and ASSIGNS; and
DOES 1 through 15, inclusive,
      Defendants.

CASE NO.
8:21cv1408-DOC-DFMx

**ORIGINAL COMPLAINT**

**(Jury Trial Demanded)**

Cal. Civ. Code §1714et seq.

Sherman Antitrust Act 15 U.S.C.

1

Plaintiff, David Goad (Mr. Goad), brings this action against defendants

RONALDO R. REYES (Mr. Reyes); DEUTSCHE BANK NATIONAL TRUST

COMPANY, AS TRUSTEE FOR SECURITIZED ASSET BACKED

RECEIVABLES LLC TRUST 2007-BR4, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2007-BR4(D bank); NEW CENTURY MORTGAGE,

its SUCCESSORS and ASSIGNS (**NCM**); and DOES 1 through 15, inclusive.

## JURISDICTION and VENUE

2.     This Court has subject-matter jurisdiction and venue over this action under **28**

**U.S.C. §1331**, and Section **15 of The Sherman Act, 15 U.S.C. §15** *"any person*

*who shall be injured in his business or property by reason of anything forbidden in*

*the antitrust laws may sue therefor in any district court of the United States in the*

*district in which the defendant resides or is found or has an agent"*

## PARTIES in this CIVIL ACTION

Plaintiff

> David Goad (**Mr. Goad**), an individual homeowner
> 537 E Ave A
> Blythe, CA 92225
> (949) 799-2225
> 1983tj@protonmail.com

Defendant No. 1

> Ronaldo R. Reyes (**Mr. Reyes**), Vice President of Deutsche
> Bank National Trust Company

1761 E Saint Andrew Pl
Santa Ana, CA 92705-4934
(714) 247-6000
Fax (714) 855-2011
ronaldo.r.reyes@db.com

Defendant No. 2

Deutsche Bank National Trust Company, as Trustee for Securitized
Asset Backed Receivables LLC Trust 2007-BR4 (**D Bank**)
1761 E Saint Andrew Pl
Santa Ana, CA 92705-4934
(714) 247-6000
Fax (714) 855-2011
ronaldo.r.reyes@db.com

Defendant No. 3

New Century Mortgage (**NCM**), its Successors and Assigns
**Note**: This Company was seized and put out of business in 2007 by
the State of California and the U.S. Government.
18400 Von Karmen, Ste 1000 (last known address)
Irvine, CA 92612
No phone, fax, or email.

Defendants No. 4-19

1.    Mr. Goad does not know the true names and capacities of the defendants
DOES 1 through 15, inclusive, and, as such, names said defendants by such
fictitious names. Mr. Goad will amend the complaint to state the true name and
capacity of the DOE defendant(s) when such information is learned.

2.    At all times mentioned herein, each defendant was acting as an agent for the
other.

3

3.    Mr. Goad is informed and believes, and alleges thereon, that each defendant is responsible in some manner for the occurrences alleged in their complaint, and that Mr. Goad's damages were proximately caused by the defendants at all times mentioned in this complaint.

4.    Mr. Goad is further informed and believes, and alleges thereon, that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, family members and/or employees, and with the permission and consent of their co-defendants.

5.    Additionally, Mr. Goad is informed and believes, and alleges thereon, that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

6.    Any applicable statutes of limitations have been tolled by the defendants continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Mr. Goad could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

## ABOUT

7.    This litigation pertains to a home loan Mr. Goad obtained in 2007 from New Century Mortgage (NCM). NCM's corporate offices in Santa Ana, CA, were locked down/seized by the State of California with the assistance of the U.S.

4

Government shortly after Mr. Goad's loan closed. NCM altered the original loan documents after they were first signed, resulting in fraud and predatory practices.

8.     The home is located at 1154 Rivertree Dr., New Braunfels, Texas. Mr. Goad's home was free and clear of debt prior to the loan in question and the loan would have <u>never</u> been signed had Mr. Goad known that it was altered after he had signed the original loan documents. The title/escrow company stated it was a formality for the borrower to re-sign the loan documents in the presence of their notary. Mr. Goad did not re-read the lengthy documents as he was assured they were originals, which they were not.

9.     Mr. Goad did not learn who possessed, controlled, or owned the loan until 2013, when Deutsche Bank National Trust Company filed in the county where the home is located a forged and fraudulent loan transfer from NCM to Deutsche Bank Nation Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-BR4(D bank). However, D bank's attorney claims D bank took control of the loan as trustee in 2007. It is believed two others possessed, controlled, or owned the loan prior to D bank. Three loan servicers and Mr. Reyes have steadfastly refused countless attempts to obtain ownership records. The loan servicers are so corrupt, Mr. Goad demanded Mr. Reyes provide him the name and address of the owners so he could move to have them employ an alternative loan

servicer. Mr. Reyes has refused each attempt and will not provide the address of the LLC is currently located. The LLC is not registered to conduct business in Texas, California, or other states.

## CAUSES

10.     Mr. Goad alleges the following causes of action:

11.     **First Cause.** Mr. Reyes, D bank refused to provide, or assist in providing the funds issued by Mr. Goad's insurance company (homeowners policy) to replace the roof from hail damage in 2012-2013. The loan servicer refused to provide the funds for the repairs stating they would not pay for labor, only materials. The insurance check included funds for both labor and materials.

12.     **Second Cause**. Mr. Reyes and D bank refused to assist Mr. Goad in repairing his roof a second time from wind damage in 2017. At that time the servicer had placed insurance on the home but refused to investigate or fund the repairs.

13.     **Third Cause**. Mr. Reyes and D bank refused to assist Mr. Goad in repairing his roof a third time when a hurricane (Harvey) caused damage to his roof and

structure in 2017. The loan servicer refused to investigate or provide funding from lender-placed insurance.

14.     **Fourth Cause**. Mr. Reyes and D bank refused to assist Mr. Goad in repairing his caved-in ceiling from a catastrophic freeze in early 2021. Second story water lines burst, taking down several sheets of drywall while flooding portions of the first story. The loan servicer would neither investigate nor provide funding from the lender-placed insurance.

15.     Summary of **Causes 1 through 4**. Mr. Reyes is obligated as VP of D bank to ensure that which is held in his trust is managed properly by his agents, the loan servicers. Simply put, a well established and acceptable standard of care to protect the depositors of the trust. Mr. Reyes was sent many notices from Mr. Goad regarding toxic mold indicating Mr. Goad could not refinance, sell, or rent the home until it was certified free of mold. Mr. Goad was forced to vacate the home in 2020 because of illness directly caused by the mold. Mr. Goad learned on July 1, 2021, that he has cancer and other health issue that are fairly traceable to the toxic mold. Words cannot be found to describe the mental anguish Mr. Goad has suffered as a result of Mr. Reyes' inaction. The mold destroyed Mr. Goad's immune system and promoted the development of a cancer that cannot be found in his family tree.

16.     Continued summary of **Causes 1 through 4.** Mr. Reyes' lack of action is in conflict with the agreement he entered into with depositors, an agreement closely scrutinized by the U.S. Government. The agreement entitled "POOLING AND SERVICING AGREEMENT, Dated as of May 1, 2007" for SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-BR4, includes Mr. Goad's mortgage and states the following in part on page 85 *"Notwithstanding anything to the contrary contained herein, in connection with a foreclosure or acceptance of a deed in lieu of foreclosure, in the event the Servicer has received actual notice of, or has actual knowledge of the presence of, hazardous or toxic substances or wastes on the related Mortgaged Property, or if the Trustee otherwise requests, the Servicer shall cause an environmental inspection or review of such Mortgaged Property to be conducted by a qualified inspector. Upon completion of the inspection, the Servicer shall promptly provide the Trustee and the Depositor with a written report of the environmental inspection."*

17.     *"After reviewing the environmental inspection report, the Servicer shall determine consistent with Accepted Servicing Practices how the Servicer shall*

*proceed with respect to the Mortgaged Property."* Exhibits[1] 1a thru 1r are a few examples of letters and emails sent to Mr. Reyes and his loan servicer agents. Mr. Reyes' willful disregard as trustee to protect the depositor's interest in the pooled investment, which contained Mr. Goad's mortgage, is overwhelming.

18.     **Fifth Cause**. Mr. Reyes, D bank, and his agents refused to provide notice under **15 U.S.C. §1641g** when the loan transferred.

### BIAKANJA TEST

19.     We apply the Biakanja test to determine if Mr. Reyes and D bank owes a duty of care to a third party (Mr. Goad) with whom he is not in contractual privity. See Biakanja, 49 Cal. 2d at 650; see also Aas v. Superior Court, 24 Cal. 4th 627,638,101 Cal. Rptr. 2d 718,12 P.3d 1125 (2000). ( *"Biakanja* held that the negligent performance of a contractual obligation, resulting in damage to the property or economic interests of a person not in privity, could support recovery if the defendant was under a duty to protect those interests.") (Brown v. HomeStreet Bank (C.D.Cal. July 5, 2019. No. EDCV 18-2379 JGB (SHKx)) 2019 U.S.Dist.LEXIS 166026, at *22-23.) In summary, Mr. Reyes, D bank, and his agents did not attempt to protect the interests of the depositors, as they all agreed to,

---

[1] All exhibits are true copies of the originals and attached and incorporated herein by reference.

which caused harm to Mr. Goad. This intentional gross negligence and breach of contract may restrict their standing to foreclose, or even their right to serve as trustees of the $850 million trust.

20.   **Sixth Cause.** Mr. Reyes and D bank's agent claims to have placed insurance from a third party, when in fact, the agent controls and benefits from the insurance as if they share ownership, have a financial interest in, and/or control the insurance company. More importantly, the agent refuses to investigate, or pay noticed claims after charging grossly overpriced fees. Mr. Goad presented these issues to the Texas Department of Insurance only to be told that he had no standing since the policy was not in his name, but rather in the agent's name. This unregulated insurance practice appears to violate the Sherman Antitrust Act **15 U.S.C. §1011-1015** and is outright deception and fraud.

21.   **Seventh Cause.** Mr. Reyes and D bank's agent unlawfully foreclosed on Mr. Goad's home. **First**, Mr. Goad's tendered payments were returned claiming he must pay lawfully deferred taxes. Mr. Goad had informed the agent of the deferral two years prior without any concern from the agent and during those two years all monthly payments were accepted. The breach of the implied agreement came two year later, disturbing **15 U.S.C. §1601 et seq. Second,** foreclosure was barred under the Texas Civil Practice and Remedies Code Chapter 16 because the

foreclosure was not completed within the mandatory four year statute of limitations after acceleration in September of 2013. Here, Mr. Reyes and D bank's agent just employs another law firm as if the first law firm never initiated the foreclosure. **Third,** Mr. Reyes and D bank's agent failed to follow the strict provisions of the Texas Constitution applicable to Extensions of Credit as demanded in the loan agreement. Although the foreclosure was untimely and void, the foreclosure must be conducted lawfully in a state court and in the county where the property is located. This is not what happened.

22.    **Eight Cause.** Countless qualified written requests were ignored by Mr. Reyes and his agents. This began in 2007 with HomEq serving when Mr. Goad could not contact the loan originator NCM, and has continued until now with Mr. Reyes. These practices disturb **RESPA** and **12 C.F.R. § 1024.36.** It appears these refusals to provide information are an organized conspiracy by all the defendants and may be reviewable under The Sherman Antitrust Act.

23.    **Ninth Cause.** Defendants used their knowledge to switch the loan agreement after it was first signed in their offices. The defendant knew the title company would require Mr. Goad to re-sign the loan documents at the title company's office before closing and submitted an altered agreement, which Mr. Goad assumed was identical to the original, or he would have never signed the

documents. Mr. Goad's home was free and clear and he was in no hurry to borrow the $75,000.00. Mr. Goad agreed to a variable interest rate (7% range) loan believing the rates were trending downward. Later, the lender increased the rate into the 8% range at signing and Mr. Goad agreed. However, the loan documents thought to be copies of the previous signed agreement were altered. The interest rate was increased one full percentage point and the loan was no longer variable as it could only go up and not down. When Mr. Goad learned of this alteration he immediately began calling. The calls and letters went unanswered because NCM was locked down for fraud, a matter of which Mr. Goad was not informed. The servicer, HomEq, refused to provide any information whatsoever. HomEq claimed they did not know who controlled, managed, or held the mortgage. Then Ocwen took over and also refused all requests. Ocwen actually lowered the interest just a fraction of a point below the altered agreement so they could then adjust the interest upward beyond the 9% range way ahead of schedule. Across the country interest rates had plummeted, but not Mr. Goad's. When Mr. Goad confronted Ocwen, they changed course. Mr. Goad has been told HomEq owned the loan. A staff member at D bank claimed Ocwen owned the loan. Since Mr. Goad has diligently pursued ownership of his mortgage and the steadfast refusal of all defendants to disclose said information, which pushed him past the statute of

limitation, Mr. Goad will seek to extend the dates until which time he gains a court order or discovers the chain of ownership.

24.     It is alleged that a conspiracy exists between all defendants to alter Mr. Goad's interest rate, conceal facts helpful to Mr. Goad, add bogus charges to his loan, and take his home because it had a loan to value ration in the 30%-40% range. More than $100,000 has been added to the original principal amount. This conspiracy is perpetuated by forcing all loan servicing into one company, Ocwen, a.k.a. PHH Mortgage.  Mr. Reyes and D bank allow Ocwen to do as they please as long as Ocwen protects Mr. Reyes and D bank. For example, lender-placed insurance by Ocwen is controlled by Ocwen even though the other company's name is noted on the insurance. Ocwen has no intention of paying out claims unless the loss reaches into the pocket of Mr. Reyes or D bank. The rates charged by Ocwen are at least double the rates of other insurers with far more coverage and Ocwen will place a policy even when insurance is in place for the profits. No matter how many letters are sent to Mr. Reyes, he will not act, even when he has breached the agreement on an $850 million contract that may bring criminal charges from the U.S. Government. For these reasons, Mr. Goad alleges the combined acts noted herein are acts in violation The Sherman Antitrust Act 15 U.S.C. et seq.

13

# REQUESTS FOR RELIEF

Defendant's negligence under Cal. Civ. Code §1714et seq. caused injury to the

plaintiff which resulted in the Compensatory and Economic Damages including,

but not limited to:

Loss of earning capacity................... Amount to be determined at trial

Past and future medical treatment.........Amount to be determined at trial

Cost to repair home........................Amount to be determined at trial

Loss of rental income......................Amount to be determined at trial

Past and future pain and suffering.........Amount to be determined at trial

Loss of enjoyment of life...................Amount to be determined at trial

Inconvenience............................ Amount to be determined at trial

Greif...................................... Amount to be determined at trial

Anxiety and humiliation................. Amount to be determined at trial

 Emotional distress...................... Amount to be determined at trial

Treble Damages (Federal antitrust only)

Costs

A reasonable wage for legal work

All other relief in law or equity the Court deems appropriate

# DEMAND FOR JURY TRIAL

Mr. Goad demands a jury trial.

Respectfully Submitted,

August 28, 2021

DAVID GOAD, *pro se*
537 E Ave A
Blythe, CA 92225
(949) 799-2225
1983tj@protonmail.com

David Goad
28270 Avenida Maravilla
Cathedral City, CA 92234

February 19, 2020

Mr. Renaldo Reyes
Deutsche Bank National Trust Co.
1761 East Saint Andrew Place
Santa Ana, CA 92705


Loan No. 070615522
Property address: 1154 Rivertree Drive
                  New Braunfels, Texas 78130

This is a demand, dispute, and qualified written request submitted under Section 6 of the Real
Estate Settlement Procedures Act (RESPA), and all other applicable state and federal statutes
that pertain to providing records to a homeowner (mortgagor), including but not limited to
Section 1641(f)(2) of the Truth In Lending Act.

1. Regarding SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2007-BR4.

   a. Provide the domicile in which the LLC was formed and the state(s) any agreements
      regarding my load were consummated.
   b. Provide a list of state(s) in which the LLC in authorized to conduct business (from its
      inception to the date of this letter).
   c. Provide a copy of the original Pooling and Serving Agreement.
   d. Provide the current legal address for the LLC (its current domicile).

2. Regarding the original loan.

   a. Provide the chain of ownership (Including but not limited to the promissory note, all Note
      Holders, or any other security interest in the original loan or securing documents.) from
      New Century Mortgage the loan originator in 2007 to the most current owner in 2020
      (Chain of ownership). It is now the **thirteenth** year I have been denied this information!
   b. Provide the addresses of all prior owners at the time of their ownership.
   c. Provide the names and dates of all assignments of the mortgage from 2007-2020.

3. Accounting information
   a. A complete and itemized statement of all advances or charges against this account.
      Attach a copy of all statements paid and a copy of all inspections.
   b. A complete and itemized statement of the escrow for this account, from the date of
      the note origination to the date of your response to this letter.
   c. A complete and itemized statement from the date of the loan origination to the date of
      your response to this letter of the amounts charged for any forced-placed insurance, the

*Exhibits 1a-1R*

date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission/fees you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

4. Provide a copy of each letter, email, fax, phone log, or other form of communications from David Goad to New Century Mortgage Corporation, HomEq Servicing Corporation, Ocwen, PHH Mortgage, and all board members of the aforementioned.

5. Damage to home.

  a. I demand that you fund an escrow account within 30 days of receipt of this letter to pay for the repairs noted in Exhibit A (incorporated herein by reference). You refused to cooperate in repairing the roof several years back with funds in hand from my insurance provider. More recently (2017), my home was damaged again as a result of a hurricane. You were notified of the claim in writing and with countless phone calls, but you ignored the claim. A complaint was filed with the Texas Insurance Commissioner (TIC) regarding your insurance company. The TCI stated that they had no recourse because the policy was not mine, but rather Ocwen's. Although countless correspondences were sent to the insurance company and Ocwen, no repairs were completed. The insurance company continued playing games so I providing open access to the property for their inspectors, and nothing ever materialized. According to the TCI it is Ocwen's responsibility to arrange for the repairs. In other words, I had no say in the situation.

  b. The home cannot be sold until the black mold is completely removed and then certified to be free of said mold. You have pictures on file.

6. Alteration of original loan agreement and predatory practices.

  a. I dispute all interest payment made and or demanded since the loan origination in 2007. The interest on the original loan documents I signed in Austin, Texas, were altered after I signed them, you have been provided copies.

  b. The loan was predatory, the servicing was predatory, documents pertaining to the loan are fraudulent, forged, and then recorded. Moreover, the foreclosure proceedings are deceptive, misleading, and unlawful. Therefore, I demand you remove the loan from my property within 30 days.

7. Please observe new address listed above

David Goad

Exhibit A

# XAVIER ROOFING AND CONSTRUCTION

| | | | | |
|---|---|---|---|---|
| Insured: | DAVID GOAD | | Home: | (512) 201-9477 |
| Home: | 1154 RIVERTREE | | | |
| | NEW BRAUNFELS, TX | | | |

| | | | | |
|---|---|---|---|---|
| Estimator: | DAVID LONGORIA | | Business: | (512) 820-3777 |

**Claim Number:**                    **Policy Number:**                    **Type of Loss:** Wind Damage

| | | | |
|---|---|---|---|
| Date of Loss: | | Date Received: | |
| Date Inspected: | | Date Entered: | 1/22/2020 4:47 PM |

| | |
|---|---|
| Price List: | TXAU8X_JAN20 |
| | Restoration/Service/Remodel |
| Estimate: | 2020-01-22-1047 |

**ESTIMATE REFLECTS JANUARY 2020 XACTIMATE PRICING**

*1d*

# XAVIER ROOFING AND CONSTRUCTION

## Roofing

**Roofing**

| DESCRIPTION | QTY | REMOVE | REPLACE | *TOTAL |
|---|---|---|---|---|
| 1. Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 26.50 SQ | 41.01 | 0.00 | 1,086.77 |
| 3. 3 tab - 25 yr. - composition shingle roofing - incl. felt | 32.00 SQ | 0.00 | 221.70 | 7,323.45 |
| 4. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 26.50 SQ | 9.84 | 0.00 | 260.76 |
| 5. Additional charge for steep roof - 7/12 to 9/12 slope | 32.00 SQ | 0.00 | 42.43 | 1,357.76 |
| 6. Additional charge for high roof (2 stories or greater) | 20.00 SQ | 3.72 | 0.00 | 74.40 |
| 7. Additional charge for high roof (2 stories or greater) | 20.00 SQ | 0.00 | 18.74 | 374.80 |
| 8. R&R Ridge cap - composition shingles | 178.00 LF | 2.60 | 3.88 | 1,167.68 |
| 9. R&R Valley metal | 32.00 LF | 0.41 | 5.32 | 188.48 |
| 10. R&R Drip edge | 285.00 LF | 0.24 | 2.26 | 729.90 |
| 11. Asphalt starter - peel and stick | 285.00 LF | 0.00 | 2.15 | 628.74 |
| 12. R&R Counterflashing - Apron flashing | 21.00 LF | 0.41 | 9.07 | 201.26 |
| 13. Step flashing | 46.00 LF | 0.00 | 9.01 | 419.58 |
| 14. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | 515.09 | 0.00 | 515.09 |
| 22. R&R Fascia - 1" x 6" - #1 pine | 285.00 LF | 0.23 | 7.06 | 2,116.92 |
| 24. R&R Sheathing - OSB - 1/2" - per independent material source | 440.00 SF | 0.41 | 1.46 | 823.53 |
| 25. R&R 1" x 2" lumber (.167 BF per LF) | 285.00 LF | 0.61 | 1.90 | 720.52 |

**Total: Roofing**          **17,989.64**

* Price is inclusive of sales tax paid at point of purchase

1E

### DRYWALL

| DESCRIPTION | QTY | REMOVE | REPLACE | *TOTAL |
|---|---|---|---|---|
| 15. R&R 1/2" drywall - hung, taped, floated, ready for paint | 400.00 SF | 0.30 | 2.54 | 1,150.19 |
| 17. R&R Blown-in insulation - 12" depth - R30 | 238.00 SF | 0.69 | 0.90 | 390.79 |
| 19. PAINT CATHEDRAL CEILING IN DEN INCLUDING SCAFFOLDING | 1.00 EA | 0.00 | 2,350.00 | 2,350.00 |
| 20. Final cleaning - construction - Residential | 500.00 SF | 0.00 | 0.20 | 100.00 |
| 27. Drywall (Bid Item) MOLD CERT | 1.00 EA | 0.00 | 875.00 | 875.00 |
| **Totals: DRYWALL** | | | | **4,865.98** |
| **Total: Roofing** | | | | **22,855.62** |
| **Line Item Totals: 2020-01-22-1047** | | | | **22,855.62** |

*1F*

# XAVIER ROOFING AND CONSTRUCTION

## Summary

| | |
|---|---|
| Line Item Total | 22,855.62 |
| Overhead | 2,285.59 |
| Profit | 2,285.59 |
| Cleaning Sales Tax | 9.90 |
| **Replacement Cost Value** | **$27,436.70** |
| **Net Claim** | **$27,436.70** |

DAVID LONGORIA

*1g*

## Recap by Room

**Estimate: 2020-01-22-1047**

| | | |
|---|---:|---:|
| **Area: Roofing** | 17,989.64 | 78.71% |
| DRYWALL | 4,865.98 | 21.29% |
| Area Subtotal: Roofing | 22,855.62 | 100.00% |
| **Subtotal of Areas** | 22,855.62 | 100.00% |
| **Total** | 22,855.62 | 100.00% |

*1h*

# XAVIER ROOFING AND CONSTRUCTION

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| CLEANING | 100.00 | 0.44% |
| GENERAL DEMOLITION | 3,193.97 | 13.97% |
| DRYWALL | 1,905.19 | 8.34% |
| FRAMING & ROUGH CARPENTRY | 546.67 | 2.39% |
| INSULATION | 226.57 | 0.99% |
| PAINTING | 2,350.00 | 10.28% |
| ROOFING | 12,481.85 | 54.61% |
| SOFFIT, FASCIA, & GUTTER | 2,051.37 | 8.98% |
| O&P Items Subtotal | 22,855.62 | 83.30% |
| Overhead | 2,285.59 | 8.33% |
| Profit | 2,285.59 | 8.33% |
| Cleaning Sales Tax | 9.90 | 0.04% |
| Total | 27,436.70 | 100.00% |

# TIME IS OF THE ESSENCE

Sent: **Tuesday, May 26, 2020 9:10 PM**

From: **1983tj 1983tj@protonmail.com**

To: **ronaldo.r.reyes@db.com ronaldo.r.reyes@db.com**

Mr. Reyes,
Please read the attached.
If you continue to refuse and act, please provide me a name and address of anyone who has enough control over the loan to begin some changes.
THE DAMAGE TO THE HOME IS REACHING A CRITICAL STAGE.
g'day
David Goad

*1j*

David Goad
28270 Avenida Maravilla
Cathedral City. California 92234
1983tj@protonmail.com

May 25, 2020

Mr. Renaldo Reyes
Deutsche Bank National Trust Co.
1761 East Saint Andrew Place
Santa Ana. CA 92705

Loan No. 070615522
Property address: 1154 Rivertree Drive
New Braunfels. Texas 78130

Mr. Reyes.

I request that you inform those who have authority over my loan (owners) to transfer the services to a competent loan service company. Ocwen[1] and their attorneys are incompetent, malicious, and violate federal and state laws as if they are above all the rules.

Referring to Joel Thomason's letter, dated April 22, 2020 (Ex 1). He states, *"much* of the information you requested has been provided." For thirteen years, I have requested the name of owners after New Century transferred their ownership of my loan in 2007. but the refusal continues. You have the records, so please provide the information.

Joel goes on to state that "necessary details" are not provided. Let us take baby steps here. Start with a copy of the reports I have requested countless times and been charged for. Ocwen charged fees; therefore, I wish to examine all reports, inspections, and appraisals. That brings up a point. Why in the hell is an appraisal needed (time after time) when the LTV ratio is less than 50%? Who is lining whose pockets?

The placed insurance policies fees, have been literally beaten to death, with no resolve (ignored). It will require a jury to decide the outcome of those fees among many others. Moreover, the home is nearly uninhabitable, with toxic mold and continued water intrusion. Ocwen steadfastly refuses to cooperate. I recommend you review all the insurance issues and provide the investors/owners/managers of my loan a report.

I have been losing $1600.00 a month in rent as a result of the damage, and the home CANNOT be sold with TOXIC BLACK MOLD prior to being certified. During 2015-2016. you were provided 16 emails/correspondence addressing roof damage and toxic mold.

I now have new pictures from the second week of May 2020. (after two heavy storms) indicating new water damage has occurred in the master bedroom. This will surely add another few thousand in repairs.

Joel incorrectly states "insurance-related concerns should be directed to *your* insurer: American Security Insurance Company" (ASIC). Attached (Ex 2) you will find a complaint I filed with the Texas Department of Insurance in 2018. I do not have their response in my

---

[1] Ocwen owns PHH Mortgage: the use of Ocwen shall also mean PHH. They are synonymous (one in the same for these matters).

*1 k*

possession; it is in one of three banker boxes full of correspondences, which include countless correspondences to you. Deutsche CEO in New York, Ocwen, and Ocwen board members. In summary, they are Ocwen's insurance provider and I have **NO STANDING** to bring a complaint to the Texas Department of Insurance (IT IS NOT MY POLICY). I suspect this is why the correspondences and phone calls have been ignored. **Therefore, I place this fiasco on your shoulders.** You have the contractors bid, the contractors contact info. and access to the legal owners of the loan. If you need me to sign-off on anything, please promptly email me.

TIME IS OF THE ESSENCE. Remember, THE HOME CANNOT BE RENTED OR SOLD WITH TOXIC MOLD as you were informed many years ago.

BTW: The current insurer under PHH would not be the proper entity to make a claim. The current issues relates back to those dates found in Ex 2.

After I have fully analyzed the 945-page securitization agreement that took years to learn of its whereabouts. I will have questions.

If you have misplaced any documents that I sent you please advise and I will provide you a copy. Furthermore, any documents that you would like a copy of that are not a part of this email I will also provide upon request.

What do you think a jury will say when three banker boxes of unanswered paper with pictures and clear proof of deception from each of you (Ocwen, PHH, Deutsche (New York & California)) is placed in their hands? I understand it is not your money and you have exhibited no concern whatsoever regarding the issues, while Deutsche spends hundreds of millions on litigation at every level of their operations. These activities where once referred to as racketeering.

Your law firm, MACKIE WOLF ZIENTZ & MANN, P.C., filed a lis pendens on my home. Be advised that the court order used to gain the lis pendens, would cause an attorney in California to be jailed, not just a suspension of their bar card. The underlying order, which you are a part of, is not just voidable, but void by statute and case law. I recommend you write a letter to Mr. Wolf and ask that he provide the details and an explanation.

Continue on laughing!

G'day

David Goad

1 L



600 Congress, Suite 2200
Austin, TX 78701
Telephone: 512-305-4700
Fax: 512-305-4800
www.lockelord.com

Joel Thomason
Direct: 512-305-4725
jthomason@lockelord.com

**Locke Lord** LLP
Attorneys & Counselors

April 22, 2020

**VIA U.S. MAIL and**
**EMAIL (1983tj@protonmail.com)**
David Goad
28270 Avenida Maravilla
Cathedral City, California 92234

> Re:   1154 Rivertree Drive, New Braunfels, Texas 78130 (the "Property")
>        Ocwen Loan No. *****5223 (the "Loan")

Mr. Goad,

I am sending this letter to you on behalf of PHH Mortgage Corporation ("PHH"). This letter is in response to your letter, dated February 19, 2020 (the "Written Request"), which you sent to a variety of officials at PHH and Deutsche Bank National Trust Company.

As an initial matter, your Written Request is particularly troubling because much of the information you request has been provided to you on five previous occasions: in letters sent to you dated August 22, 2019, June 28, 2019, November 1, 2018, October 10, 2018, and September 28, 2018. For instance, you state that you have been denied the "chain of ownership" information of regarding the Loan, yet my previous five letters have included this information. Please review these letters, copies of which I have enclosed.

The Written Request makes vague references to the Real Estate Settlement Procedures Act (RESPA) and "all other applicable state and federal statutes." But the Written Request is structured more like a written discovery request in litigation than a proper Qualified Written Request (QWR) under RESPA. A QWR must request information related to servicing of the above-referenced Loan. In this case, most of the Written Request's individual requests do not pertain to the "servicing" of the above-referenced Loan, as defined by 12 U.S.C. § 2605(i)(3).

Notably, the Written Request fails to identify or provide any of the necessary details regarding any purported error(s) made by PHH in connection with the servicing of the Loan and seeks information that goes well beyond that which is available through a QWR. *See* 12 U.S.C. § 2605(e)(1)(b). Rather than identifying any purported error(s), the Written Request asks for information regarding the identification of parties, escrow disbursements, forced-placed insurance,

EXHIBIT 1

*1 m*

application of payments, various charges, and loss mitigation details. The general statements in the Written Request lack sufficient detail regarding any purported error(s).

Although the Written Request does not constitute a valid QWR, is overly broad, is unduly burdensome, and is not in conformity with federal law, I have undertaken a review of PHH's files in an attempt to obtain information responsive to your inquiries. I have provided responsive information below.

- The applicable pooling and servicing agreement is publicly available from the Securities & Exchange Commission's EDGAR database and can be accessed at this link: https://www.sec.gov/Archives/edgar/data/1402316/000091412107001664/se9066239 -ex4.txt.

- My previous letters, which are enclosed, included copies of the promissory note (the "Note"), security instrument (the "Security Instrument"), and assignments of the Loan.

- New Century Mortgage Corporation originated the Loan. New Century Mortgage Corporation filed for bankruptcy in 2007 and upon information and belief is no longer in operation. *See In re New Century Mortg. Corp.*, No. 07-10419-BLS (Bankr. D. Del. 2007).

- Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-BR4, Mortgage Pass-Through Certificates, Series 2007-BR4 ("DBNTC as Trustee") currently holds the Note and Security Instrument.

- PHH currently services the Loan. This firm represents PHH and DBNTC as Trustee with respect to the Loan. Therefore, our firm is the appropriate contact should you have further questions regarding the Loan.

- I have enclosed an updated payment reconciliation history. As explained in my previous letters, the payment reconciliation history includes information pertaining to the receipt and application of Loan payments, the accrual of interest, payments held in suspense, escrow advances (including for insurance and property taxes) and related charges, late charges, property preservation fees such as inspections and appraisals, among others things. Much of the information you request in included in the enclosed payment reconciliation history.

- I have enclosed an updated escrow statement, which includes projected escrow expenses through March 2021.

- Though not entirely clear, your insurance-related comments appear to generally misunderstand PHH's obligations with regarding to insurance proceeds relating to the

*1n*

Loan and the Property. Under Section 5 of the Security Instrument, PHH is entitled to retain insurance proceeds "until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction." At its discretion PHH "may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed." Contrary to your comments in the Written Request, PHH is not obligated to disburse insurance proceeds until work on the Property is complete. Furthermore, as previously explained, insurance-related concerns should be directed to your insurer: American Security Insurance Company. For your convenience, I have enclosed a copy of the current insurance policy covering the Property.

- I have enclosed an updated payoff quote.

- You raise serious claims that your original loan documents were altered and/ or forged. It is unclear, however, who you allege altered and/or forged the documents, what documents you allege were altered or forged, what portions of the documents you allege were altered or forged, how the documents were altered or forged, when the documents were altered or forged, and the basis for your contention that documents were altered or forged. Without further information, PHH is unable to investigate and respond to these allegations.

The remaining requests in your letter are vague and harassing or otherwise do not warrant a response. Please note that in providing the above response and enclosed documents, PHH is not limiting or waiving any rights or remedies available to it, whether arising under the subject Loan documents, at law, or in equity, all of which rights and remedies are expressly reserved. Moreover, PHH further asserts that any response and/or documents it provided pursuant to your "Written Request" do not constitute an admission by PHH regarding any of the demands or allegations presented in the "Written Request," nor alter your obligations under the Loan in any way.

Sincerely,

Joel Thomason

*10*

David Goad
1154 Rivertree Drive
New Braunfels, Texas 78130

August 30, 2018

Texas Department of Insurance
PO Box 149104
Austin, TX 78714-9104

### COMPLAINT AGAINST OCWEN LOAN SERVICING
### AND ASSURANT INC.

To whom it may concern:

My name is David Goad and the non-responsive insurance claim(s) I am reporting surround a home located at 1154 Rivertree Drive, New Braunfels, Tx 78130.

I wish to lodge a formal complaint regarding insurance placed by the Ocwen Loan Servicing on said property. In summary, I have made two claims of storm damage and Ocwen together with Assurant (insurance co.) have ignored the claims and refused to respond.

Ocwen Loan Servicing is a company that was hit with a 2.1 BILLION burden for restitution by the Consumer Financial Protection Bureau in 2013. This very large amount was a result of Ocwen's bad acts against homeowners. Ocwen was reprimanded for their practices of placing insurance on the homes which they serviced the loans.

### EVENTS (phone calls and letters)

1. The first claim was reported to Ocwen on January 23, 2017, @11:19 A.M. to Oscar ID # 100903. On January 22, 2017, a wind storm caused damage to the roof.

2. Letter sent on January 23, 2017, to CEO at Ocwen, see Exhibit "A".

3. The second claim was reported on August 31, 2017 beginning @ 2:40 p.m. from damage caused by hurricane Henry. Since there was no response to the first claim (Jan 23) both Ocwen and Assurant were contacted. Assurant listed a phone number of 866-317-7661. This number has a recording *"our insurance carrier or an affiliate is staffing the call center."* However, Ocwen staff in either India or the Philippine's answer the phone. The following took place:

   a. On Aug 31, I spoke to Jennifer Majono at Ocwen. I informed her that a prior claim was made with no response and now there is second claim from damage caused by hurricane Henry.
   b. On Aug 31, called Assurant (staff would not provide name). Expressed prior claim that Ocwen would not respond and was then transferred to hazard insurance processing center at Ocwen. It appears Assurant has an interconnecting phone system with Ocwen. Call was disconnected.

# EXHIBIT 2

*1p*

c. On Aug 31, called Assurant back and was transferred to Sheila Archibald. Left recorded message with my name and phone number, she never responded to the call.

d. On Aug 31, called Ocwen (hazard insurance processing center) and spoke to Tiffany Scott. Told her a prior claim has not been addressed and I have a second claim from hurricane Henry. Asked that she "find out why you have not taken care of this and send me a letter." No letter or follow-up was made by Ms. Scott.

e. On Aug 31, called Assurant requesting someone in their executive offices. Provided number for Alan Colberg, president/ceo.

f. Aug 31, @ 3:11 P.M. left message for Mr. Colberg to return my call. Mr. Colberg never responded.

g. Aug 31, @ 5:20 P.M. received call from Shellie Pierce at Ocwen. She stated "I'm following up on your recent insurance claim." I asked that she listen to all the audio recordings regarding the claims and go through the file, read the file, and put everything in writing to me.

h. Sept 13, Shellie Pierce called stating she was following up on our prior conversation. She would not allow me to finish my sentence so I told her to "get the recording and put everything in writing to me."

i. Letter sent on September 14, 2017, to Mr. Alan Colberg, CEO at Assurant, see Exhibit "B." There is one more letter that I'm having difficulty locating.

4. Multiple calls have been made to both Ocwen and Assurant requesting that a licensed Texas insurance agent contact me regarding the insurance policy. No response has come.

5. My experiences with Ocwen include, but are not limited to Ocwen sanitizing files, refusing to address issues in writing, forgery of documents, and deception beyond ones wildest dreams. I have between 100 and 300 unanswered communications with Ocwen. Ocwen's practices are intended to beat you down to a point that you give up! This is why one has to draw a line and tell Ocwen staff to do a little research on prior calls and letters, which they will NOT.

If you have any questions regarding this complaint against Ocwen, and Assurant aka: American Security Insurance Co., please contact me at: Ocwenracketeering@gmail.com or 512-730-0762.

Thank You


David Goad

Cc: Mr. Alan Colberg, CEO          Mr. Ronald Farris
    Assurant Inc.                   Ocwen
    28 Liberty Street               P.O. Box24646
    NY, NY 10005                    West Palm Beach, FL 33416-4646

David Goad
1154 Rivertree Drive
New Braunfels, Texas 78130

September 14, 2017

Mr. Alan Colberg, CEO
Assurant Inc.
28 Liberty Street
NY, NY 10005

Re: Ocwen Ins, loan no: 706155223

Hello Mr. Colberg,

Please be advised that there is a problem with your insurance. When I call your company, I am transferred to Ocwen with zero results. I called your office on August 31, 2017 and left a message asking you to return my call. It appears you NY "big-wigs" could care less!

Long story short, I turned in the first claim to Ocwen after a windstorm on January 23, 2017, and I have received no response whatsoever. Temporary repairs were made.

Then we caught the edge of hurricane Harvey and have additional damage, some structural from a tree.

I have spoken to Shellie Pierce twice asking that she "put everything in writing" and she refuses to respond. When one deals with Ocwen (if in fact that is who employs her?) one must record every call and follow up with a correspondence (Ocwen is well known for sanitizing files). I have in excess of 100, possibly several hundred correspondences. I have even sent letters directly to Mr. Farris' home. You may know him as the CEO of Ocwen. Bottom line: NOTHING YIELDS RESULTS.

Time is of the essence "to act" need I say more?

Good day

David Goad

EXHIBIT A

1R

Part # 152297 • 15 • EXP 05/22

To reuse, cover or mark through any previous shipping information.



ORIGIN ID:SVZA   (720) 591-3995
DAVID GOAD

28270 AVENIDA MARAVILLA

CATHEDRAL CITY, CA 92234
UNITED STATES US

TO   US DISTRICT COURT
411 W 4TH ST
STE 1-053
SANTA ANA CA 92701
(714) 338-4760

SHIP DATE: 20AUG21
ACTWGT: 0.20 LB
CAD: 6995049/SSFE2220

BILL CREDIT CARD

RECEIVED
CLERK US DISTRICT CO
AUG 30 2021
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

FedEx Express

E



MON - 30 AUG 10:30A
PRIORITY OVERNIGHT

92701
CA-US   SNA

TRK# 2830 7817 4747

XH APVA

Reusable

RT 294
FZ B11
1        D
10:30   47A7
        08:30



Reusabl

RT **294**
FZ **B11**
**1** **D**
10-30
4747
08-30

Express
**FedEx**